IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30463
_____

DOMINICK ARCURI, JR.; ET AL.,

Plaintiffs,

versus

CHEVRON USA PRODUCTS COMPANY;
ET AL.,

Defendants.

————————

ESSEX INSURANCE COMPANY,

Plaintiff-Appellee,

versus

DAVID WALLINGTON; ET AL.,

Defendants,

DAVID WALLINGTON; BARBARA
WALLINGTON; PATRICIA HUGHES,
doing business as Barpat, Inc.; BARPAT,
INC.,

Defendants-Appellants.

Appeal from the United States District Court for
the Eastern District of Louisiana
(USDC No. 98-CV-3094-C)
_____

May 17, 2000

Before REAVLEY, DAVIS and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Barbara Wallington, David Wallington, Patricia Hughes, and Barpat, Inc. (the "Wallingtons"), appeal the judgment in favor of Essex Insurance Company declaring there to be no coverage of the Wallingtons' claims. We affirm.

Dominick Arcuri, Jr., the Estate of Sam Arcuri and the Estate of Dominick Arcuri (the "Arcuris") own a parcel of real property in LaPlace, Louisiana where a service station was operated for a number of years. Three underground storage tanks ("USTs") were installed on the property in 1946 by Humble Oil, the predecessor of Chevron, to store gasoline for the station. In 1950 two service bays were constructed over the USTs. At some point the USTs were no longer used for gasoline and the Arcuris began using them to store waste oil. Sometime between 1951 and 1966 the Arcuris ceased to use the USTs altogether. Unable to remove five inches of petrochemicals from the bottom of the USTs, the Arcuris filled them with water.

In the 1990's the property was no longer used as a service station and a tenant of the Arcuris converted the service bay structure into a bar, which was later rented by the Wallingtons. The Wallingtons operated a bar there until a 1996 complaint to the Louisiana Department of Environmental Quality resulted in a determination that the

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ground beneath the bay was contaminated with benzene and other chemicals. The Wallingtons were forced to close the bar and the USTs had to be removed, resulting in the partial destruction of the structure.

The Wallingtons sued the Arcuris and Chevron in Louisiana state court claiming damages for personal injuries resulting from exposure to toxic fumes and economic losses from the closure of their business (the "State Court Lawsuit"). The Wallingtons also named Essex as a defendant under the Louisiana law permitting direct actions against insurers because Essex insured the Arcuris under Commercial General Liability policies. After the Arcuris settled with the Wallingtons, Essex attempted to remove the action to Federal Court on diversity jurisdiction but the case was remanded on the basis that, under 28 U.S.C. § 1332(c)(1), insurance companies sued in direct actions are deemed citizens of the same state as the insured, even if the insured is not a party defendant to the suit.

The Arcuris sued Chevron and Essex for indemnity for the claims of the Wallingtons and for the Arcuris' own personal injuries resulting from exposure to chemicals from the USTs (the "Arcuri Lawsuit"). This lawsuit was removed to Federal Court by Chevron. Essex brought a federal lawsuit against the Wallingtons and the Arcuris for interpleader, declaratory judgment and injunctive relief (the "Essex Lawsuit"). The Arcuri Lawsuit was consolidated with the Essex Lawsuit and the district court granted summary judgment to Chevron and Essex on all claims.

On appeal, the Wallingtons assert that the district court lacked subject matter jurisdiction, that the district court erred in ruling that the pollution exclusion barred coverage and that the district court should have abstained or declined to hear the

3

declaratory judgment action.[1]

JURISDICTION

The Wallingtons' first point of appeal asserts that the district court lacked subject matter jurisdiction to hear this lawsuit. The Wallingtons argue that the prior ruling remanding the State Court Lawsuit operates as law of the case, rendering Essex a citizen of Louisiana for this lawsuit and destroying diversity jurisdiction. The district court remanded the State Court Lawsuit pursuant to 28 U.S.C. § 1332(c)(1), which provides: "[I]n any direct action against an insurer ... to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen." By its own terms, this statute only applies to direct actions. Because the case at bar is a declaratory judgment action and not a direct action, § 1332(c)(1) is inapplicable. The doctrine of law of the case is also inapplicable because the remand order was granted in the State Court Lawsuit, which is a different lawsuit from the case at bar. The district court had diversity jurisdiction because Essex and Chevron are diverse from the Arcuris and the Wallingtons, who are Louisiana citizens. The argument of the Wallingtons about the propriety of interpleader can have no effect on this holding.

DECLARATORY JUDGMENT

The Wallingtons assert that the district court erred in declining to abstain from this case under Burford v. Sun Oil Co., 319 U.S. 315 (1943). The Wallingtons argue that the issue of pollution exclusion clauses is a matter of vital interest to Louisiana public policy from which the federal court should abstain in favor of determination by state courts. While the issue of pollution exclusion clauses is undoubtedly a matter of significant

---

[1] The Arcuris and Chevron settled their disputes prior to oral argument and the points raised by their briefs are not before the court.

4

public policy, the law of Louisiana is clearly established by <u>Ducote v. Koch Pipeline Co., L.P.</u>, 730 So. 2d 432 (La. 1999) and the interpretation of insurance policies does not present the sort of intricate system of resource regulation presented in <u>Burford</u>. The district court did not abuse its discretion in declining the Wallingtons' request to abstain from the case.

The Wallingtons further argue that, pursuant to <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995), the district court abused its discretion in hearing the declaratory judgment action. In considering a request to decline to hear a declaratory judgment action under <u>Wilton</u>, the question is "whether the questions in controversy between the parties to the federal suit ... can be better settled in the proceeding pending in the state court." <u>Wilton</u> at 282 (quoting from <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491, 495 (1942)). One of the factors guiding the district court's discretion is "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state court] action." <u>Wilton</u> at 283 (quoting from <u>Brillhart</u> at 495).

If the only case pending at the time that Essex brought the declaratory judgment action was the State Court Lawsuit, then a better argument could be made that a federal declaratory judgment action would constitute "indulging in gratuitous interference." <u>Id.</u> Such is not the case, however, because the Arcuri Lawsuit was already proceeding against Essex and Chevron in federal court. The declaratory judgment action by Essex and the consolidation with the Arcuri Lawsuit enabled all of the parties to resolve all of the claims in one action, serving the policy of judicial efficiency. Because the consolidated action encompassed more parties and claims than the State Court Lawsuit, the claims of all the parties in this case could not be satisfactorily adjudicated in the state court and the district court did not abuse its discretion.

5

INSURANCE COVERAGE

The Wallingtons contend that the district court erred in holding that the pollution exclusion clauses excluded coverage for their claims against the Arcuris.  The Wallington's reliance on South Central Bell Telephone Co. v. Ka-Jon Food Stores of Louisiana, Inc., 644 So. 2d 357 (La. 1994), is misplaced.  The opinion is of no precedential value because it was vacated on rehearing.  South Central Bell Telephone Co. v. Ka-Jon Food Stores of Louisiana, Inc.,644 So. 2d 368 (La. 1994); Ducote, 730 So. 2d at 436, FN 1.  The Louisiana Supreme Court has held that the scope of a pollution exclusion clause must be determined from the terms of the clause. See Ducote at 436. The pollution exclusion clauses at issue in this case exclude coverage for "any loss, cost, or expense ... as a result of actual, alleged or threatened discharge, dispersal, release or escape of pollutants..."  Such language is unambiguous and provides for a total exclusion of coverage for the claims in this case.

The claims of the Wallingtons against the Arcuris are the result of benzene and other petrochemicals escaping from the USTs.  The chemicals in question undoubtedly fall within the policies' definition of pollutants, which is any "solid, liquid, gaseous, thermal, acoustic, electric, magnetic, electromagnetic irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, fibers, radiation, acids, alkalies, toxic chemicals or materials, and waste."  The unambiguous language of the policies excludes these claims from coverage under the policies.

AFFIRMED